Robert J. Herrington (SBN 234417)
*herringtonr@gtlaw.com*
Michael E. McCarthy (SBN 301010)
*mccarthyme@gtlaw.com*
GREENBERG TRAURIG, LLP
1840 Century Park East, 19th Floor
Los Angeles, CA 90067-2121
Telephone: 310-586-7700
Facsimile: 310-586-7800

Attorneys for Defendants
IKEA US RETAIL LLC and
IKEA NORTH AMERICA SERVICES, LLC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

BO ZHANG, Individually and on behalf of all others similarly situated,

Plaintiff,

vs.

IKEA US RETAIL LLC and IKEA NORTH AMERICA SERVICES, LLC,

Defendants.

CASE NO. 3:24-CV-01641-MMC

Hon. Maxine M. Chesney

**DEFENDANTS IKEA US RETAIL LLC AND IKEA NORTH AMERICA SERVICES, LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

[Declaration of Michael E. McCarthy; [Proposed] Order Filed Concurrently]

Hearing Date: December 19, 2025
Hearing Time: 9:00 a.m.
Courtroom: 7 – 19th Floor

Action Filed: March 15, 2024
Trial Date: None

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on December 19, 2025, at 9:00 a.m., in Courtroom 7 of the above-captioned Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendants IKEA US RETAIL LLC and IKEA North America Services, LLC (collectively, "IKEA") will move for an order dismissing Plaintiff Bo Zhang's Third Amended Complaint ("TAC") (ECF No. 70) with prejudice under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), 12(f) and 23(d)(1)(D). This Motion is made on these grounds:

(1) Zhang's claims hinge on the conclusion that IKEA HEMNES and BRIMNES daybeds have a safety defect because some daybed slats use comb joints, but he alleges no facts plausibly showing this is a defect. He also alleges no facts showing he sustained an injury. All claims fail for both reasons.

(2) As based on representations, Zhang's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA) claims fail because there was no actionable representation he relied on that would mislead a significant portion of reasonable consumers.

(3) As based on omissions, Zhang's UCL, FAL, and CLRA claims fail because he does not allege facts showing IKEA knew of any defect or had a duty to disclose.

(4) Zhang's UCL, FAL, and CLRA (restitution/injunctive relief) claims are equitable, and thus the claims fail because Zhang alleges an adequate legal remedy in the form of money damages.

(5) Zhang's UCL, FAL, and CLRA claims also fail because they sound in fraud but are not alleged with particularity under Rule 9(b).

(6) Zhang's sole express warranty claim fails because he does not show that IKEA made or breached any express warranty for his HEMNES daybed. The claim also fails because Zhang does not allege any service or refund attempt, let alone an attempt that IKEA rejected.

(7) Zhang's implied warranty claims fail because he alleges no facts showing his daybed is unmerchantable.

(8) All requests for injunctive relief in the TAC should be dismissed because Zhang does not allege facts showing a concrete, imminent threat of future injury.

(9) If any claims survive dismissal, the nationwide class allegations in the TAC should be dismissed or stricken because (i) Zhang lacks standing to assert any claim on a nationwide basis, and (ii)

choice-of-law principles also preclude a nationwide class action.

This Motion is supported by the below Memorandum of Points and Authorities, the concurrently filed Declaration of Michael E. McCarthy and Proposed Order, all pleadings and files in this action, and upon such other submissions as may be presented to the Court at or before the hearing on this Motion.

Dated: October 31, 2025

GREENBERG TRAURIG, LLP

By: */s/ Robert J. Herrington*
Robert J. Herrington
Michael E. McCarthy
Attorneys for Defendants
IKEA US RETAIL LLC and
IKEA NORTH AMERICA SERVICES, LLC

**TABLE OF CONTENTS**


I. INTRODUCTION AND STATEMENT OF ISSUES (CIV. L.R. 7-4(A)(3)) ....... 1

II. PROCEDURAL HISTORY ....... 2

III. SUMMARY OF PLAINTIFF'S THIRD AMENDED COMPLAINT ....... 4

A. Zhang's Individual Experience Still Does Not Support His Claims ....... 4

B. Zhang Again Misstates Consumers' Favorable Product Reviews. ....... 5

C. Zhang's Latest Allegations About Slat Testing Do Not State a Claim ....... 6

IV. ALL PLAINTIFF'S CLAIMS SHOULD BE DISMISSED ....... 7

A. Motion to Dismiss Standard ....... 7

B. Zhang Still Alleges No Facts Showing Comb Joints Are a Defect or That He Was Injured. ....... 8

C. Zhang's Consumer-Fraud Claims Fail for Four More Reasons ....... 10

1. The misrepresentation claims fail because there was no actionable statement that would mislead reasonable consumers ....... 10

2. The omission claims fail because Zhang does not allege facts showing IKEA knew comb joints posed a safety defect or had a duty to disclose. ....... 12

i. Zhang does not allege facts showing that IKEA knew about any alleged safety defect. ....... 12

ii. Zhang also does not allege facts showing that IKEA had a duty to disclose. ....... 14

3. Zhang's UCL, FAL, and CLRA claims also fail because they are equitable, but he seeks damages and pleads an adequate legal remedy. ....... 15

4. Zhang's group pleading also does not satisfy Rule 9(b). ....... 16

D. Zhang Still Fails to State Any Express or Implied Warranty Claim ....... 17

1. Zhang fails to show that IKEA created or breached any express warranty. ....... 17

2. Zhang does not allege multiple service attempts, as required for a Song-Beverly claim. ....... 18

3. Zhang alleges no facts establishing that his (or any other) daybed is unmerchantable. ....... 18

E. Zhang Lacks Standing to Pursue Injunctive Relief ....... 20

F. The Nationwide Class Allegations Should Be Stricken. ....... 21

1. The Court should strike the nationwide class allegations for lack of standing. .......... 21

2. Choice-of-law principles also preclude a nationwide action. .......... 21

V. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A. H. v. West Contra Unified Sch. District*,
2024 WL 1719484 (N.D. Cal. Apr. 22, 2024) .......... 23

*Acedo v. DMAX, Ltd.*,
2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) .......... 19

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) .......... 15

*Anton Int'l v. Gaojing Wei*,
2021 WL 3017996 (C.D. Cal. Apr. 28, 2021) .......... 7

*Arakelian v. Mercedes-Benz USA, LLC*,
2018 WL 6422649 (C.D. Cal. June 4, 2018) .......... 18

*In re Arris Cable Modem Consumer Litig.*,
2018 WL 288085 (N.D. Cal. Jan. 4, 2018) .......... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 7

*Barrera v. Samsung Elecs. Am., Inc.*,
2018 WL 10759180 (C.D. Cal. Dec. 7, 2018) .......... 17, 18

*Barton v. Procter & Gamble Co.*,
766 F. Supp. 3d 1045 (S.D. Cal. 2025) .......... 8

*Becerra v. Dr Pepper/Seven Up, Inc.*,
945 F.3d 1225 (9th Cir. 2019) .......... 10

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) .......... 20

*Blissard v. FCA US LLC*,
2018 WL 6177295 (C.D. Cal. Nov. 9, 2018) .......... 13-14

*Broomfield v. Craft Brew All., Inc.*,
2017 WL 3838453 (N.D. Cal. Sep. 1, 2017) .......... 21

*Bryan v. Del Monte Foods, Inc.*,
2023 WL 4758452 (N.D. Cal. July 25, 2023) .......... 20

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) .......... 8

*Campos v. Polaris, Inc.*,
2024 WL 1816945 (C.D. Cal. Mar. 5, 2024) .......... 19

*Carpenter v. Petsmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020) .......... 21

*Chimie v. PPG Indus., Inc.*,
2003 WL 22400215 (D. Del. Oct. 9, 2003) .......... 11

*Cho v. Hyundai Motor Co., Ltd.*,
636 F. Supp. 3d 1149 (C.D. Cal. 2022) .......... 14

*Cohen v. Porsche Cars N. Am., Inc.*,
2019 WL 6700941 (C.D. Cal. Dec. 6, 2019) .......... 8

*Cooper v. Simpson Strong-Tie Co., Inc.*,
460 F. Supp. 3d 894 (N.D. Cal. 2020) .......... 8

*Corson v. Toyota Motor Sales, U.S.A., Inc.*,
2013 WL 1802709 (C.D. Cal. Apr. 24, 2013) .......... 16

*Cover v. Windsor Surry Co.*,
2016 WL 520991 (N.D. Cal. Feb. 10, 2016) .......... 22

*Crown Cell Inc. v. Ecovacs Robotics Inc.*,
2022 WL 4087512 (N.D. Cal. Sep. 6, 2022) .......... 18

*Darisse v. Nest Labs, Inc.*,
2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) .......... 22

*Davidson v. Apple, Inc.*,
2017 WL 3149305 (N.D. Cal. July 25, 2017) .......... 11

*Davison v. Kia Motors Am., Inc.*,
2015 WL 3970502 (C.D. Cal. June 29, 2015) .......... 22

*Deras v. Volkswagen Grp. of Am., Inc.*,
2018 WL 2267448 (N.D. Cal. May 17, 2018) .......... 13

*Edin v. BSH Home Appliances Corp.*,
2021 WL 890702 (C.D. Cal. Jan. 19, 2021) .......... 8

*In re Fallon Luminous Products Corp.*,
2011 WL 477860 (Bankr. E.D. Tenn. Feb. 3, 2011) .......... 11

*Fitzpatrick v. Ford Motor Co.*,
2022 WL 17037498 (C.D. Cal. Nov. 15, 2022) .......... 19

*Fonseca v. Goya Foods, Inc.*,
2016 WL 4698942 (N.D. Cal. Sep. 8, 2016) .......... 15

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
483 F. Supp. 3d 838 (C.D. Cal. 2020) .......... 11

*Forouzesh v. CVS Pharmacy, Inc.*,
2019 WL 652887 (C.D. Cal. Feb. 15, 2019) .......... 8

*Frenzel v. Aliphcom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) .......... 17

*Glenbrook Cap. Ltd. P'ship v. Kuo*,
525 F. Supp. 2d 1130 (N.D. Cal. 2007) .......... 5

*Grundstrom v. Wilco Life Ins.*,
2022 WL 2390992 (N.D. Cal. July 1, 2022) .......... 16

*Guzman v. Polaris Indus., Inc.*,
2020 WL 2477684 (C.D. Cal. Feb. 13, 2020) .......... 10

*Guzman v. Polaris Indus., Inc.*,
49 F.4th 1308 (9th Cir. 2022) .......... 15

*Hageman v. Hyundai Motor Am.*,
2024 WL 694378 (C.D. Cal. Jan. 5, 2024) .......... 23

*Hamilton v. TBC Corp.*,
328 F.R.D. 359 (C.D. Cal. 2018) .......... 22

*Hanna v. Walmart Inc.*,
2020 WL 7345680 (C.D. Cal. Nov. 4, 2020) .......... 20

*Hernandez v. DTI GmbH*,
2024 WL 3939569 (N.D. Cal. Aug. 26, 2024) .......... 12

*In re Hitachi Television Optical Block Cases*,
2011 WL 9403 (S.D. Cal. Jan. 3, 2011) .......... 22

*Hoffman v. Ford Motor Co.*,
2021 WL 3265010 (C.D. Cal. Mar. 31, 2021) .......... 20

*Hudson v. Lyft, Inc.*,
2024 WL 3585596 (N.D. Cal. July 30, 2024) .......... 20

*Jackson v. Suzuki Motor of Am., Inc.*,
2024 WL 3914666 (C.D. Cal. July 9, 2024) .......... 8, 9

*Johnson v. Maker Ecosystem Growth Holdings, Inc.*,
2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) .......... 17

*Jones v. Micron Tech., Inc.*,
400 F. Supp. 3d 897 (N.D. Cal. 2019) .......... 21

*Julio v. Glick*,
2016 WL 998535 (C.D. Cal. Feb. 10, 2016) .......... 9

*Kahn v. FCA US LLC*,
2019 WL 3955386 (C.D. Cal. Aug. 2, 2019) .......... 12, 19

*Kearney v. Hyundai Motor Co.*,
2010 WL 9093204 (C.D. Cal. June 4, 2010) .......... 18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 16

*Klaehn v. Cali Bamboo, LLC*,
2020 WL 3971518 (S.D. Cal. July 13, 2020) .......... 13

*Klaehn v. Cali Bamboo, LLC*,
2021 WL 3044166 (S.D. Cal. June 14, 2021) .......... 15

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
992 F. Supp. 2d 962 (C.D. Cal. 2014) .......... 19

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 21

*Lowe v. Edgewell Pers. Care Co.*,
711 F. Supp. 3d 1097 (N.D. Cal. 2024) .......... 7

*Luppino v. Mercedes-Benz USA, LLC*,
2013 WL 6047556 (D.N.J. Nov. 12, 2013) .......... 17-18

*Madrigal v. Hint, Inc.*,
2017 WL 6940534 (C.D. Cal. Dec. 14, 2017) .......... 15

*Maneely v. Gen. Motors Corp.*,
108 F.3d 1176 (9th Cir. 1997) .......... 17, 18

*Marchante v. Sony Corp. of Am.*,
2011 WL 6027602 (S.D. Cal. Dec. 5, 2011) .......... 14

*Mathison v. Bumbo*,
2008 WL 8797937 (C.D. Cal. Aug. 18, 2008) .......... 19

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 22, 23

*McCrary v. Elations Co., LLC*,
2013 WL 6403073 (C.D. Cal. July 12, 2013) .......... 11

*McGinity v. Procter & Gamble Co.*,
69 F.4th 1093 (9th Cir. 2023) .......... 10

*McKinney v. Corsair Gaming, Inc.*,
646 F. Supp. 3d 1133 (N.D. Cal. 2022) .......... 22

*Miller v. Ford Motor Co.*,
620 F. Supp. 3d 1045 (E.D. Cal. 2022) .......... 14

*Moore v. Trader Joe's Co.*,
4 F.4th 874 (9th Cir. 2021) .......... 10

*In re Natera Prenatal Testing Litig.*,
664 F. Supp. 3d 995 (N.D. Cal. 2023) .......... 12

*Nazos v. Toyota Motor Corp.*,
2022 WL 17078882 (C.D. Cal. Oct. 13, 2022) ........ 11

*Ocampo v. Apple Inc.*,
2022 WL 767614 (N.D. Cal. Mar. 14, 2022) ........ 19

*Oddo v. United Techs. Corp.*,
2022 WL 577663 (C.D. Cal. Jan. 3, 2022) ........ 15

*Park v. Cole Haan, LLC*,
2019 WL 1200337 (S.D. Cal. Mar. 13, 2019) ........ 12

*Pelayo v. Hyundai Motor Am., Inc.*,
2021 WL 1808628 (C.D. Cal. May 5, 2021) ........ 13

*In re Plum Baby Food Litig.*,
2024 WL 1354447 (N.D. Cal. Mar. 28, 2024) ........ 14

*Przybylak v. Bissell Better Life, LLC*,
2019 WL 8060076 (C.D. Cal. July 19, 2019) ........ 21

*Resnick v. Hyundai Motor Am., Inc.*,
2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ........ 12

*Ruegsegger v. Caliber Home Loans*,
2019 WL 8163640 (C.D. Cal. Jan. 8, 2019) ........ 21

*Sharma v. Volkswagen AG*,
524 F. Supp. 3d 891 (N.D. Cal. 2021) ........ 16

*Sims v. Kia Motors Am., Inc.*,
2014 WL 12558249 (C.D. Cal. Mar. 31, 2014) ........ 19

*SK Microworks Am., Inc. v. Far E. New Century Corp.*,
2025 WL 1196360 (C.D. Cal. Jan. 23, 2025) ........ 7

*Sloan v. Gen. Motors LLC*,
2017 WL 3283998 (N.D. Cal. Aug. 1, 2017) ........ 13

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ........ 15, 16

*Stewart v. Electrolux Home Products, Inc.*,
2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ........ 12

*Sugarman v. Muddy Waters Cap. LLC*,
2020 WL 633596 (N.D. Cal. Feb. 3, 2020) ........ 16

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ........ 16

*T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,
83 F. Supp. 3d 855 (N.D. Cal. 2015) ........ 17

*Thomas v. Costco Wholesale Corp.*, 2022 WL 636637 (9th Cir. Mar. 4, 2022) .......... 10

*Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009) .......... 13

*Vinci v. Hyundai Motor Am.*, 2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) .......... 22, 23

*Vitiosus v. Alani Nutrition, LLC*, 2022 WL 2441303 (S.D. Cal. July 5, 2022) .......... 21

*Vitt v. Apple Comput., Inc.*, 469 F. App'x 605 (9th Cir. 2012) .......... 11

*Williams v. Yamaha Motor Co.*, 851 F.3d 1015 (9th Cir. 2017) .......... 15

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) .......... 12

*Yastrab v. Apple Inc.*, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) .......... 18

**Statutes**

Cal. Civ. Code § 1793.2(d) .......... 18

Cal. Com. Code § 2314 .......... 3

Cal. Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.* .......... 3

Cal. False Advertising Law, Cal. Bus. & Prof Code §§ 17500 *et seq.* .......... 3

Cal. Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1790 *et seq.* .......... 3

Cal. Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200 *et seq.* .......... 3

**Rules**

Fed. R. Civ. P. 8 .......... 8

Fed. R. Civ. P. 9(b) .......... 2, 10, 16, 17

Fed. R. Civ. P. 23(d) .......... 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND STATEMENT OF ISSUES (CIV. L.R. 7-4(A)(3))

Despite another amendment, Plaintiff's claims remain deficient for the same reasons the Court dismissed them before. Zhang again claims that "comb joints" are a safety defect.[1] But the Court rejected this theory twice (ECF No. 48 ("Order") and ECF No. 69 ("Second Order")), and the Third Amended Complaint ("TAC") provides no basis for a different ruling. As the Court explained: the issue is not whether slats without comb joints might be "better," but whether there is a "substantial certainty" that slats with comb joints will "fail under ordinary use." (Second Order at 6-7.) The TAC still provides no facts addressing that core issue, and Plaintiff again fails to connect any purported slat testing to ordinary consumer use. Thus, Zhang still has not stated a claim, and the case should be dismissed with prejudice. (*Id.* at 11 (advising that TAC would "in all likelihood" be the "last shot").)[2]

**The TAC fails to allege any safety defect or injury (all Counts I-VI)**

Zhang rehashes his claim that his daybed is "defective" and poses a "safety hazard" because some slats are pine wood with comb joints. But the Court already rejected this claim as unsupported. (Order at 5-7; Second Order at 4-8.) Zhang does not allege that his daybed ever failed. And the TAC's latest testing allegations remain untethered to consumer use or any measurable standard. Thus, Plaintiff still fails to allege facts plausibly showing a defect or injury. (Section IV.B.)

**Zhang again fails to state any UCL, FAL, or CLRA claim (Counts II-IV)**

**Zhang fails to state a misrepresentation claim**. As the Court held, Zhang failed to state a misrepresentation claim because he alleged no statement that was false or likely to deceive a significant portion of reasonable consumers. (Order at 3-5; Second Order at 4-5.) The TAC adds nothing new (Section IV.C.1), and the Court already declined Zhang's invitation to reconsider. (Second Order at 4.)

**Zhang fails to state an omission claim.** Plaintiff also fails to state an omission claim because he still alleges no facts showing (i) IKEA knew its daybeds were purportedly defective because of comb joints,

---

[1] A comb joint, also known as a finger joint, is a common woodworking joint made by cutting a set of complementary, interlocking profiles in two pieces of wood, which are then adhered. The interlocking profiles increase the surface area for adhesion, resulting in a strong bond. *See, e.g.*, *Wood Joint – Finger, Comb*, https://www.dimensions.com/element/wood-joint-finger-comb (last visited October 28, 2025).

[2] All emphases are added and all internal citations are omitted unless otherwise noted in this brief.

or that (ii) IKEA had a duty to disclose that the slats may use comb joints. (Section IV.C.2.)

**Zhang asserts equitable claims but alleges an adequate legal remedy.** The TAC does not state a claim under the UCL or FAL, or for restitution or injunctive relief under the CLRA, because these are equitable claims, and Zhang alleges an adequate legal remedy in the form of damages. (Section IV.C.3.)

**Zhang's claims are not alleged with particularity.** Zhang's UCL, FAL, and CLRA claims sound in fraud, yet the TAC relies on group pleading, which fails to satisfy Rule 9(b). (Section IV.C.4.)

**Zhang states no warranty claim (Counts I, V and VI)**

**Zhang alleges no express warranty or breach.** Zhang withdrew this claim in response to IKEA's prior motions to dismiss, and the TAC adds nothing new. Thus, the express warranty claim (Count V) fails again because Zhang (i) identifies no statement guaranteeing that daybed slats would not use comb joints and (ii) never alleges that he sought or was denied warranty service. (Sections IV.D.1 & IV.D.2.)

**The implied warranty claims fail because comb joints did not render Zhang's daybed unmerchantable.** The TAC still does not state a claim for breach of implied warranty (Counts I, VI) because Zhang alleges no facts plausibly showing that comb joints are a safety defect or that his daybed is unfit for ordinary use. (Section IV.D.3.)

**Zhang fails to state any claim for injunctive relief**

Zhang cannot bring any claim for prospective injunctive relief because he alleges no concrete and imminent threat of future injury to himself, as required. (Section IV.E.)

**Zhang cannot assert nationwide class allegations**

Finally, the Court should strike or dismiss the nationwide class allegations for two reasons. *First*, Zhang lacks standing to assert any claims on a nationwide basis. (Section IV.F.1.) *Second*, material differences in state law preclude applying California law to a nationwide class. (Section IV.F.2.)

## II. PROCEDURAL HISTORY

The TAC is Zhang's fourth pleading. IKEA moved to dismiss Zhang's Complaint, First Amended Complaint ("FAC"), and Second Amended Complaint ("SAC"). (ECF Nos. 30, 35, 52.) Zhang amended in response to IKEA's first motion to dismiss (ECF No. 32), and the Court granted IKEA's second and third motions (ECF Nos. 48, 66, 69). When it dismissed the FAC, the Court ruled that: (i) IKEA's statement that daybed slats are made of "solid pine" is not an actionable misrepresentation; (ii) the "very small

percentage of reported incidents pertaining to the slats" does not show "an inherent defect that is 'substantially certain to result in a malfunction[;]'" and (iii) Zhang "failed to plead facts sufficient to support a finding that the comb joints constitute a defect." (*See* Order at 3-7.)

Following that Order, Zhang filed the SAC adding two new sets of allegations. *First*, he excerpted a July 2024 YouTube video in which user "MatthiasWandel" tests salvaged wood with and without comb joints to failure. (SAC ¶¶ 32-36.) *Second*, he added allegations about load-bearing testing conducted by a retained "materials expert, David V. Niebuhr, Ph.D., P.E." (*Id.* ¶¶ 49-58.) IKEA moved to dismiss, arguing that the SAC's allegations failed to connect any tests to real-life usage scenarios or show how an IKEA daybed would fail based on ordinary use. (ECF No. 52 at 4-5.) The Court agreed and dismissed all Zhang's claims, explaining:

> [I]n order to show that these beds are not safe or not merchantable, you need to show that there is a substantial certainty that they will fail. Nobody['s] bed that's in our case ha[s] failed. . . . The YouTube video does not work. All right. There's just nothing in there about who this guy is, what he did, where these pieces of wood came from . . . [or] the validity of his testing. . . . [As to Dr. Niebuhr's testing,] the problem there is that mostly what he did is compare what he said were pieces of wood without comb joints to pieces of wood that had comb joints and say[] that the ones with the comb joints fail sooner under certain magnitudes of force -- or of pressure. . . . [But] the issue is not whether the other is better but whether the comb joint ones aren't good enough to the point where there's a substantial certainty they're going to fail under ordinary use. . . . You need to show . . . a substantial certainty [that these beds] will fail under ordinary use. . . . We have no idea if this is really extraordinary force that's being applied to one small area on the slats. That's not how people ordinarily lie on a bed. . . .[T]here's just nothing there to show this even is relevant.

(*See* Second Order at 5-9.)[3]

As shown below, the TAC fails to heed the Court's instruction, as it again provides no *facts* showing that IKEA daybed slats with comb joints are substantially certain to fail under ordinary use.[4]

---

[3] The Court also explained that it would not change its rulings on issues already decided. Thus, Zhang's claim that "solid pine is a misrepresentation" is "out," and a few cherrypicked customer complaints "do not show that the bed is defective." (*See* Second Order at 4-5.)

[4] The TAC reasserts the same claims from the SAC except for breach of express warranty under U.C.C. § 2-313. The TAC leaves six claims: (i) breach of implied warranty of merchantability (Cal. Com. Code § 2314); (ii-iv) violation of California's Unfair Competition Law (UCL), False Advertising Law (FAL), and Consumers Legal Remedies Act (CLRA); (v) breach of express warranty under California's Song-Beverly Consumer Warranty Act (SBA); and (vi) breach of implied warranty of merchantability under the SBA.

## III. SUMMARY OF PLAINTIFF'S THIRD AMENDED COMPLAINT

### A. Zhang's Individual Experience Still Does Not Support His Claims.

According to Zhang, rather than providing daybed slats made of "solid wood," some slats have "comb" or "finger" joints, which are pieces of wood joined using an "interlocking zig-zag pattern." (TAC ¶¶ 1-2.) Zhang insists that comb joints are unsafe. (*Id.* ¶¶ 2, 37, 117.) But the TAC's allegations show he is speculating. He claims comb joints are "*susceptible* to environmental changes" like "temperature," "moisture," and "humidity," and can weaken "over time." (*Id.* ¶¶ 2, 31.) Yet he has never alleged what temperature, moisture, or humidity levels might affect comb joints. (*Id.*) Nor has he ever alleged over what period a comb joint could hypothetically weaken and present "concerns," much less the force that a human body applies to a bed or how the strength of IKEA daybed slats compares to that force (whether over time or based on a single usage). (*Id.*)

Zhang's allegations about his own experience are unchanged. He claims he bought a HEMNES daybed on September 3, 2023, for $449, from an IKEA in Emeryville, California. (*Id.* ¶ 16.) He repeats that, before buying the daybed, he reviewed "promotional materials on [IKEA's] website" stating the "bed base slats were made out of solid wood." (*Id.* ¶¶ 18-19.) He also repeats that he "inspected" the floor model. (*Id.* ¶ 18.) But he still does not say whether this supposed inspection included the slats, or what, if anything, he relied on at the store. (*Id.* ¶¶ 18-20.)[5]

After buying the daybed, Zhang alleges he began assembling it at home and "first learned that the bed frame slats" were "multiple pieces connected via comb joints." (*Id.* ¶ 21.) He claims his daybed "felt" less "sturd[y]" than the floor model. (*Id.* ¶ 22.) But the TAC still provides no facts showing this had anything to do with comb joints,[6] and Zhang does not allege that any comb joints failed or that any slats cracked or broke. (*See id.* ¶¶ 22-31.)

Zhang also claims he returned to the IKEA store "two days after" his purchase. (*Id.* ¶ 22.) But once more, he fails to explain why he did not complain or seek to return his daybed under IKEA's consumer-friendly Return Policy: "If you're not totally satisfied with your IKEA purchase you can . . . return open

---

[5] Floor models are assembled at the store from the same product lots sold to consumers.

[6] Zhang has never explained how any perceived softness related to the alleged "possibility" of "weakening" "over time." (*See* TAC ¶¶ 2, 31.)

products within 180 days, with your proof of purchase, for a full refund." (McCarthy Decl., Ex. A.)[7]

**B. Zhang Again Misstates Consumers' Favorable Product Reviews.**

Zhang again claims consumers are misled by the materials description tab on IKEA's website, which states that the "[b]ed base" is "solid pine[,]" while other components may use materials like particleboard. (TAC ¶¶ 16 n.4, 18-21.) But he still does not allege that the slats are made of anything other than solid pine. (*See id.*)[8] Nor does he offer any new facts after the Court's ruling that claims about the statement "solid pine" are "out." (Second Order at 4.)

Zhang also rehashes a small set of cherrypicked customer reviews, which he has reduced to 16 total from the 25 in the SAC. (*Compare* TAC ¶ 48, *with* SAC ¶ 47.)[9] He now asserts for the first time that only some IKEA daybeds come with comb-jointed slats, and that all 16 reviews selected for the TAC must have involved such products. (*See id.* ¶¶ 1, 47-48.) Yet he provides no factual support for these changed allegations. (*Id.*) Nor could he know whether these 16 reviews involved daybed slats with comb joints as only one mentions comb joints. (*See id.* ¶ 48.) Even "as to the small number of complaints pertaining to broken slats," there still "is a lack of clarity with regard to the cause of such malfunction, which may well have resulted from a number of causes[.]" (Order at 6-7.)

Zhang concludes that his 16 cherrypicked reviews "support the inference that comb-jointed slats are substantially certain to fail under ordinary use[.]" (TAC ¶ 48.) But the Court has rejected that assertion twice. (Order at 6-7; Second Order at 5.) Zhang's reformulation with no new facts changes nothing. And he again ignores the thousands of positive reviews on the IKEA website *he* cites (TAC ¶ 16 n.4), which show that, of more than 3,400 reviews, about 87% of customers provided a 5 or 4-star rating, with customers rating the product 4.4 out of 5 stars overall. (McCarthy Decl., Ex. B.) Out of almost 700 reviews for a similar model with a different color, about 86% of customers provided a 5 or 4-star rating, with

[7] The Court may consider the Return Policy because it is publicly available, not subject to reasonable authenticity dispute, and goes to the heart of Zhang's claim that he was supposedly misled and injured. *See Glenbrook Cap. Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130, 1137 (N.D. Cal. 2007) (courts may judicially notice documents "integral to the plaintiff's claims" and whose "authenticity is not disputed").

[8] Zhang also ignores that comb joints are consistent with IKEA's marketing cited at paragraph 24 of the TAC, which explains to consumers that IKEA makes "good use of wood" and "work[s] to find ways to make more great designs using less raw material." (TAC ¶ 24.)

[9] Just 10 of the 16 cherrypicked reviews predate Zhang's purchase. (TAC ¶¶ 16, 48.)

customers rating the product 4.4 out of 5 stars overall. (McCarthy Decl., Ex. C.) Zhang provides no facts to suggest how he knows (or could possibly know) which of the thousands of favorable reviews involve daybed slats with or without comb joints. (*See* TAC ¶¶ 1, 47.)

**C. Zhang's Latest Allegations About Slat Testing Do Not State a Claim.**

Aside from trying to recast 16 customer reviews, the TAC adds allegations about testing by Zhang's alleged expert. (TAC ¶¶ 50-61.)[10] But these allegations still miss the point: the question is *not* whether slats without comb joints might be "better," but whether slats with comb joints are "substantially certain" to "fail under ordinary use." (Second Order at 6-7.) Zhang's expert allegedly tested IKEA HEMNES daybed slats using two methods (TAC ¶¶ 50-51), but neither addresses the core issue.

*First*, Zhang alleges his expert conducted a "static load test" to "measure the strength of a material when a fixed load is applied." (*Id.* ¶ 52.) This test involved a "4-point bend" method, where a single slat is supported at its edges on blocks, and force is applied directly to the slat in two locations between its midpoint and its edges. (*Id.* ¶¶ 53-55.) After conducting twelve tests, Zhang alleges that, on average, a comb-jointed IKEA slat supports a lighter load than a "continuous" IKEA slat without comb joints. (*Id.* ¶¶ 54-55.) Zhang alleges that the average breaking load for a comb-jointed slat under this test method is 309 pounds, while the average breaking load for a continuous slat is 731 pounds. (*Id.*)

*Second*, Zhang alleges his expert conducted a "dynamic load test" to "simulate impact with the slats[.]" (*Id.* ¶ 56.) This test involved placing a single slat on pins at its edges and repeatedly dropping a "slender 35-lb. weight" onto the slat center from a height of six inches. (*Id.* ¶¶ 57-58.) After conducting twelve tests, Zhang alleges that, on average, a comb-jointed IKEA slat fractures after fewer impacts than a continuous IKEA slat. (*Id.* ¶¶ 59-60.) Zhang alleges that, on average, a comb-jointed slat fractures after about 5.67 drops (or 136 newton-meters of absorbed energy) under this test method, while a continuous slat fractures after about 18.5 drops (or 444 newton-meters of absorbed energy). (*Id.*)[11]

From these tests—which avoided testing a full set of IKEA slats under a mattress as a reasonable

---

[10] Zhang's expert appears to have conducted new testing for the TAC, presumably because the testing alleged in the SAC was unexplainable. (*See* Second Order at 8 ("I mean, didn't somebody talk to this expert and find out what he did? You can't be speculating about what he did.").)

[11] These averages were calculated by adding the figures in Table 2 in paragraph 59 and then dividing the totals by the number of tests performed (six tests on the comb-jointed and continuous slats each).

consumer would use the product—Zhang concludes that IKEA's daybeds "are neither safe nor merchantable, and there is a substantial certainty that they will fail." (*Id.* ¶ 64.) Yet Zhang still provides nothing to support his leap of logic. None of the alleged tests even try to assess ordinary consumer use; when consumers use an IKEA daybed, they do not apply a static or dynamic load to an isolated point on a single slat without a mattress. (Second Order at 8 ("We have no idea if this is really extraordinary force that's being applied to one small area on the slats.")) Zhang also cites no standards, and he never explains how the test methods or results show a HEMNES or BRIMNES daybed will fail based on ordinary use. (*Id.* ("That's not how people ordinarily lie on a bed.")) Nor did Zhang's expert conduct any slat testing with weight (or energy) disbursed (or absorbed) by a mattress or across multiple slats; he never even identifies an amount of force that a slat must absorb. (*Id.* at 9-10 ("[T]here's just nothing there to show this even is relevant . . . [Y]ou have to show" what the expert did "that's relevant to what our case is and, in particular, to showing that there's a substantial certainty these beds will fail."))[12] Thus, despite another amendment, the Court is left to guess what these tests show, other than that IKEA slats with comb joints may break after several hundred pounds of force are applied directly to a single slat in isolation, or that continuous slats may be "better," none of which states a claim. (*Id.* at 6-7.)

## IV. ALL PLAINTIFF'S CLAIMS SHOULD BE DISMISSED

### A. Motion to Dismiss Standard.

To survive a motion to dismiss, a complaint must allege sufficient facts to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'[T]he non-conclusory 'factual content' and reasonable inferences from that content must be plausibly suggestive of a claim entitling the plaintiff to relief.'" *Lowe v. Edgewell Pers. Care Co.*, 711 F. Supp. 3d 1097, 1101 (N.D. Cal. 2024).

---

[12] As IKEA explained, according to basic physics, stress equals force divided by area (S=F/A). *See SK Microworks Am., Inc. v. Far E. New Century Corp.*, 2025 WL 1196360, at *7 (C.D. Cal. Jan. 23, 2025) ("The parties agree that stress measures the force distributed over a particular area."); Encyclopedia Brittanica Science & Technology, *Stress*, at https://www.britannica.com/science/stress-physics ("stress is expressed as a quotient of a force divided by an area") (last visited October 28, 2025). *See also Anton Int'l v. Gaojing Wei*, 2021 WL 3017996, at *2 (C.D. Cal. Apr. 28, 2021) (taking notice of Encyclopedia Brittanica entry). Plaintiff's alleged testing applies static or dynamic force directly to a single slat at isolated points. But when consumers use the product, force is distributed across several slats and through a mattress. As the number of slats (or area) increases, the force needed to achieve the same stress per slat also increases. Plaintiff's alleged testing still ignores these fundamental principles.

**B. Zhang Still Alleges No Facts Showing Comb Joints Are a Defect or That He Was Injured.**

This case should be dismissed because Zhang still fails to meet Rule 8's plausibility standard, allege a safety defect, or allege any cognizable injury. To state claims based on an alleged product defect, Zhang must provide plausible facts showing the defect exists. *See Cohen v. Porsche Cars N. Am., Inc.*, 2019 WL 6700941, at *2 (C.D. Cal. Dec. 6, 2019) (dismissing case because plaintiffs failed to plausibly allege the key entry system on their vehicles was defective); *Cooper v. Simpson Strong-Tie Co., Inc.*, 460 F. Supp. 3d 894, 909 (N.D. Cal. 2020) ("[T]he FAC does not plausibly allege that the Product was subject to premature corrosion or defective in any way[.]"); *Jackson v. Suzuki Motor of Am., Inc.*, 2024 WL 3914666, at *4 (C.D. Cal. July 9, 2024) ("'Plaintiffs must identify facts giving rise to their belief that a defect for which Defendant is responsible exists[.]'"). When a plaintiff claims a product is unsafe or defective based on product testing, he or she must plausibly connect the tests to the hazard alleged. *See Lowe*, 711 F. Supp. 3d at 1104 (dismissing complaint alleging "independent testing" found unsafe substance in defendant's products because plaintiff provided no facts supporting "interpretation of those [test] results"); *Barton v. Procter & Gamble Co.*, 766 F. Supp. 3d 1045, 1060-62 (S.D. Cal. 2025) (similar); *Forouzesh v. CVS Pharmacy, Inc.*, 2019 WL 652887, at *4 (C.D. Cal. Feb. 15, 2019) ("Here, Forouzesh attached a copy of his product-testing Report to his Complaint. However, rather than support the plausibility of his conclusory allegations, the Report contradicts them.").

Zhang cannot show injury simply by alleging that he thinks he bought a "defective" product. To show actionable injury, he must allege facts showing that *his* product failed or has a non-speculative risk of failing. *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015) ("[W]hen economic loss is predicated solely on how a product functions, and the product has not malfunctioned, the Court agrees that something more is required than simply alleging an overpayment for a 'defective' product."), *aff'd*, 717 F. App'x 720 (9th Cir. 2017); *Edin v. BSH Home Appliances Corp.*, 2021 WL 890702, at *3 (C.D. Cal. Jan. 19, 2021) ("[S]tanding would still require Plaintiffs to plead facts plausibly supporting the existence of a risk of future harm, which they have entirely failed to do.").

The Court dismissed the FAC and SAC because, in addition to failing to allege an actionable representation, Zhang "failed to plead facts sufficient to support a finding that the comb joints constitute a defect." (Order at 7; *see also* Second Order at 7 (dismissing because testing allegations failed to show that

IKEA slats with comb joints will fail under ordinary use).) The TAC tries to cure the deficiency with more alleged testing. (TAC ¶¶ 50-64.) But the allegations suffer from the same flaws as before.

According to Zhang's expert, after testing HEMNES daybed slats using a 4-point bend method, the average "breaking load" for a slat with comb joints is 309 pounds when the load is applied directly to a single slat in two locations. (TAC ¶¶ 54-55.) Across six impact tests dropping a 35-pound weight, a single comb-jointed slat also can, on average, withstand about 5.67 direct, concentrated blows to its midpoint. (*Id.* ¶¶ 59-60.) On their face, these tests show the considerable *strength* of the slats. And as before, the TAC never explains (i) what the tests mean when the slats are used with a mattress, (ii) the weight the slats supposedly *should* bear, (iii) the number of impacts the slats supposedly *should* tolerate, (iv) any standard the slats supposedly should meet but do not, or (v) how the results show a safety issue. (*Id.* ¶¶ 50-66.) If anything, Zhang's allegations continue to contradict his theory, confirming that a single slat with comb joints can support significant stress that does not resemble ordinary use.[13]

Zhang also provides no facts about what "temperature," "moisture," or "humidity" levels might affect slats with comb joints or how. (*Id.* ¶¶ 2, 31.) He does not allege over what "time" period a comb joint could hypothetically weaken and present a purported "structural concern." (*Id.*) He does not allege that the slats in his daybed split, cracked, broke, or failed. (*See id.* ¶¶ 16-31.) He also does not explain how comb joints caused any supposed infirmity that he "perceiv[ed]" right after assembling his daybed. (*See id.* ¶¶ 2, 22-23, 31.) *See Jackson*, 2024 WL 3914666, at *4 ("'Plaintiffs . . . must *plausibly connect* the existence of th[e] alleged defect to the injuries they claim to have suffered.'").

In other words, Zhang still provides no facts[14] showing that his daybed was defective, or that he suffered any injury from comb joints. This is IKEA's fourth motion to dismiss raising the same

[13] As explained in footnote 12: if the stress needed to break an IKEA slat with comb joints was 200 pounds of force applied directly to a single slat (an amount far lower than what Plaintiff's alleged expert measured), then when the area is increased to 5 slats (such as by weight disbursement over a mattress), it takes about 1,000 pounds of force (200 pounds x 5) to achieve the same stress per slat. Zhang's HEMNES daybed contains more than two dozen slats. (*See* TAC ¶¶ 16 n.4, 51 (alleging 26 slats in the bed base).)

[14] Zhang's legal argument in his amended pleading (TAC ¶ 65) does not help him. *See, e.g.*, *Julio v. Glick*, 2016 WL 998535, at *7 (C.D. Cal. Feb. 10, 2016) ("Plaintiffs are admonished that it is improper to include legal argumentation in a complaint."). Nor does reinserting his allegations about an irrelevant YouTube video—which the Court soundly rejected. (*See* TAC ¶¶ 32-36; Second Order at 5-8.)

deficiencies. The TAC's allegations confirm Zhang cannot cure them.

**C. Zhang's Consumer-Fraud Claims Fail for Four More Reasons.**

Zhang's UCL, FAL, and CLRA claims should be dismissed for four more separate reasons. *First*, Zhang fails to allege any representation he saw that would mislead reasonable consumers. *Second*, he alleges no omission claim, as he provides no facts showing IKEA knew of any "defect" or had a duty to disclose. *Third*, Zhang's UCL and FAL claims are purely equitable, as are any requests for restitution or injunctive relief. Yet Zhang seeks damages and thus has an adequate remedy at law. *Fourth*, the UCL, FAL, and CLRA claims sound in fraud, yet Zhang's group pleading does not satisfy Rule 9(b).

**1. The misrepresentation claims fail because there was no actionable statement that would mislead reasonable consumers.**

To state misrepresentation claims, Zhang must allege an affirmative statement he relied on that would likely deceive reasonable consumers. *See McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023) ("UCL, FAL, and CLRA" claims "are governed by the 'reasonable consumer' standard."); *Guzman v. Polaris Indus., Inc.*, 2020 WL 2477684, at *3 (C.D. Cal. Feb. 13, 2020) (plaintiff must allege "actual reliance" on the statement). Satisfying the "reasonable consumer" standard "requires more than a mere possibility that [something] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019). Rather, the "standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* at 1228-29. A plaintiff's "unreasonable assumptions . . . will not suffice." *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021); *accord Thomas v. Costco Wholesale Corp.*, 2022 WL 636637, at *2 (9th Cir. Mar. 4, 2022).

Zhang alleges that, before buying his daybed, he viewed content on IKEA's "website" stating that the "bed base slats were made out of solid wood." (TAC ¶ 18.) He also claims he "inspected" the floor model, but he does not allege whether his inspection included the slats or what, if anything, he saw or relied on during this visit. (*Id.*) Instead, Zhang remains focused on the website's statement that the slats are "solid pine" rather than fiberboard or particleboard. (*Id.* ¶¶ 18-20.) Thus, as before, his claim rests on the assumption that the description "solid pine" must mean pine wood *containing no comb joints and*

*consisting of only one piece per slat*. (*See id.* ¶¶ 2, 4, 18-21.) This claim fails again for the same reasons.[15]

*First*, the descriptor "solid" in "solid pine" is generalized and non-actionable. "[T]o be actionable as an affirmative misrepresentation, a statement must make a 'specific and measurable claim[.]'" *Vitt v. Apple Comput., Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012). Courts hold that descriptors like "solid" are non-actionable "because they are 'inherently vague and generalized terms' and 'not factual representations that a given standard has been met.'" *See id.* ("rugged," "built to withstand," and "reliable" are puffery); *Nazos v. Toyota Motor Corp.*, 2022 WL 17078882, at *6 n.6 (C.D. Cal. Oct. 13, 2022) ("rigid" and "solid" are non-actionable puffery); *Davidson v. Apple, Inc.*, 2017 WL 3149305, at *11 (N.D. Cal. July 25, 2017) ("Courts across the country have held" that "durable," "sturdy" and "similar terms are non-actionable"). Zhang agrees the slats were made of pine, and the descriptor "solid" is not a factual representation that any standard has been met. Thus, it does not support liability. *See Vitt*, 469 F. App'x at 607.

*Second*, even if the descriptor "solid" in "solid pine" could be actionable, the Court already found it is improbable that reasonable consumers could be misled. (Order at 3-5; Second Order at 4-5.) Merriam-Webster offers the primary definition of "solid" as: "being without an internal cavity." (Order at 4 (citing https://www.merriam-webster.com/dictionary/solid).) Courts have interpreted the term similarly. *See, e.g.*, *In re Fallon Luminous Products Corp.*, 2011 WL 477860, at *14 (Bankr. E.D. Tenn. Feb. 3, 2011) (interpreting "solid" using its dictionary definition to mean "free from cavities" or "not hollow"); *Chimie v. PPG Indus., Inc.*, 2003 WL 22400215, at *6 (D. Del. Oct. 9, 2003) (construing "solid" as an object that is not "hollow"). Zhang alleges nothing showing that most (or any) consumers would interpret "solid" to mean that pine wood bed slats *have no comb joints*,[16] or that consumers even consider this issue. *See In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 483 F. Supp. 3d 838, 843 (C.D. Cal.

---

[15] As explained in prior briefing and the Court's Order, actual reliance is an essential element of Zhang's consumer fraud claims. *See McCrary v. Elations Co., LLC*, 2013 WL 6403073, at *8 (C.D. Cal. July 12, 2013). As before, the only specific statement that Zhang alleges induced his purchase was the materials description on IKEA's website that the slats are made of "solid pine." (*See* TAC ¶¶ 18-20.) Thus, "Zhang's UCL, FAL, and CLRA claims [remain] predicated on a single alleged misrepresentation, namely, IKEA's statement that the HEMNES Daybed's slats are made of 'solid pine[.]'" (Order at 3.)

[16] Merriam-Webster uses "*solid* furniture" as an example for its fourth definition of the term—"made firmly and well"—reinforcing that "solid pine" as a furniture descriptor is non-actionable. (https://www.merriam-webster.com/dictionary/solid (last visited October 28, 2025).)

2020) ("[N]o reasonable consumer would interpret the term 'automatic' in the way that Plaintiff claims he did."); *Hernandez v. DTI GmbH*, 2024 WL 3939569, at *8-9 (N.D. Cal. Aug. 26, 2024) (there must be a plausible factual basis that consumers are "actually thinking" about the distinctions in question).[17]

When dismissing the SAC, the Court told Zhang it is "not going to hear" his misrepresentation claims again, and that these claims are "out." (Second Order at 4-5.) Zhang reasserts the claims in the TAC but offers no new allegations. Thus, the misrepresentation claims should be dismissed with prejudice. (Order at 3-5; Second Order at 4-5.)

**2. The omission claims fail because Zhang does not allege facts showing IKEA knew comb joints posed a safety defect or had a duty to disclose.**

Omission-based consumer fraud claims also must provide facts showing the defendant knew about the "defect" before plaintiff bought the product, *and* that the defendant had a duty to disclose. *See Resnick v. Hyundai Motor Am., Inc.*, 2017 WL 1531192, at *14, *20 (C.D. Cal. Apr. 13, 2017) (finding consumer fraud claims deficient based on lack of pre-sale knowledge); *In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1008-09 (N.D. Cal. 2023) (outlining the duty to disclose in California). Zhang alleges neither.

i. <u>Zhang does not allege facts showing that IKEA knew about any alleged safety defect.</u>

To state an omission claim, Zhang must, at a minimum, allege facts showing that IKEA was aware of the supposed safety defect at the time of sale and thus could have disclosed it. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). Plaintiff also must "allege *how* the defendant obtained knowledge of the specific defect *prior* [to] the plaintiff's purchase of the defective product." *Stewart v. Electrolux Home Products, Inc.*, 2018 WL 1784273, at *8 (E.D. Cal. Apr. 13, 2018) (emphasis in original). "[A]llegations of the defendant's knowledge cannot be conclusory or speculative." *Id.*

The TAC summarily concludes that IKEA "knew" comb joints in HEMNES and BRIMNES daybeds were a safety hazard. (TAC ¶¶ 4, 38, 102, 128-129.) But courts reject generic assertions like these. *See Kahn v. FCA US LLC*, 2019 WL 3955386, at *4 (C.D. Cal. Aug. 2, 2019) (finding allegations

---

[17] IKEA's Refund Policy further undermines the claim that reasonable consumers are misled. *See Park v. Cole Haan, LLC*, 2019 WL 1200337, at *3 (S.D. Cal. Mar. 13, 2019) (return policy "further undercut" claims alleging consumers were misled by clothing quality). Any consumer dissatisfied with comb joints could return the daybeds for a full refund for up to 6 months. (McCarthy Decl., Ex. A.) Zhang does not explain why he returned to the store "two days" after his purchase but never sought a refund. (TAC ¶ 22.)

conclusory that did not identify "any particular testing, reports, or otherwise that gave Defendant knowledge about the [defect]"); *Wilson*, 668 F.3d at 1147 ("The allegation that HP, as the manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative[.]"); *Tietsworth v. Sears, Roebuck & Co.*, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) ("Nor can Plaintiffs establish a duty by pleading, in purely conclusory fashion, that Defendants were in a 'superior position to know the truth about the Machines' and 'actively concealed' the defect.").[18]

Zhang alleges that IKEA knew of the "defect" based on 16 complaints posted by third parties on its website, just 10 of which predate his purchase. (*See* TAC ¶¶ 48, 128-129.) But these postings do not show a defect or knowledge of an issue from comb joints. As the Ninth Circuit has recognized, complaints "merely establish the fact that some consumers were complaining," which is different than knowledge of a defect. *Wilson*, 668 F.3d at 1147. To show knowledge, courts have insisted on an unusual number of complaints about a specific defect before allowing an omission claim to survive a motion to dismiss. *See, e.g.*, *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) (finding around sixty complaints did not "show VW's knowledge of the alleged defect"); *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) ("[T]he Ninth Circuit has held that consumer complaints suffice to establish knowledge only where there were an *unusual* number of complaints, such that the manufacturer would be on notice of a specific problem.") (emphasis in original). Generalized or disparate complaints about a product do not show knowledge of a defect. *See, e.g.*, *Klaehn v. Cali Bamboo, LLC*, 2020 WL 3971518, at *6 (S.D. Cal. July 13, 2020) ("[A]lleging that Cali knew that some customers were complaining is not the same as alleging that Cali knew that their product was, in fact, defective."); *Pelayo v. Hyundai Motor Am., Inc.*, 2021 WL 1808628, at *6 (C.D. Cal. May 5, 2021) (finding allegations deficient that did not connect generalized complaints with the purported engine defect claimed).

Zhang has not alleged an unexpected number of pre-sale complaints, let alone an unexpected number relating to comb joints. He alleges that IKEA sold thousands of daybeds (TAC ¶ 71), but he provides just 10 pre-sale complaints (*id.* ¶ 48). He offers nothing showing that this tiny percentage would catch IKEA's attention or represent anything more than isolated issues. *See Blissard v. FCA US LLC*, 2018

[18] The July 2024 YouTube video and alleged expert testing disclosed in the TAC also could not show IKEA's *pre-sale* knowledge, as Zhang alleges buying his daybed in September 2023. (TAC ¶ 16.)

WL 6177295, at *13 (C.D. Cal. Nov. 9, 2018) (finding 12 pre-sale complaints insufficient); *Cho v. Hyundai Motor Co., Ltd.*, 636 F. Supp. 3d 1149, 1168 (C.D. Cal. 2022) (finding "400 complaints [] quantitatively insufficient without some indicia of how [they] represent an 'unusually high' amount").[19] Only one complaint even refers to comb joints, and it is dated *after* Zhang's purchase. (TAC ¶ 48.) Most customers also gave the daybeds favorable reviews (McCarthy Decl., Exs. B-C), undercutting any suggestion that IKEA knew about a "defect" based on customer feedback. *See Miller v. Ford Motor Co.*, 620 F. Supp. 3d 1045, 1071 (E.D. Cal. 2022) ("[E]ven twenty-three complaints before the purchase of [plaintiff's] vehicle are insufficient[.]"). Because Zhang fails to allege facts showing IKEA knew comb joints were a purported safety defect before his purchase, his omission claims fail.

ii. Zhang also does not allege facts showing that IKEA had a duty to disclose.

To state an omission claim, Zhang also must allege facts showing IKEA had a duty to disclose the information it supposedly knew but omitted. *See In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4 (N.D. Cal. Mar. 28, 2024). Under California law, a duty to disclose arises "when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors . . . . [N]amely[,] when the defendant [i] is the plaintiff's fiduciary; [ii] has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; [iii] actively conceals a material fact from the plaintiff; and [iv] makes partial representations that are misleading because some other material fact has not been disclosed." *Id.*

Zhang generically alleges that IKEA owed "a duty to disclose" because the purported "[d]efect created a safety hazard and [IKEA]: (a) possessed exclusive knowledge of the Defect; (b) intentionally concealed the Defect from Plaintiff and the Class; and/or (c) made incomplete representations by failing to warn the public or to recall the Class Beds due to the Defect." (TAC ¶ 103.) But he provides no *facts* to support any of these assumptions, which simply parrot portions of the legal standard. He provides no facts showing there is a "defect" in the slats to begin with, let alone a defect that constitutes an unreasonable safety hazard. (Order at 7; Second Order at 4-5; Section IV.B, *supra*.) *See also Marchante v. Sony Corp. of Am.*, 2011 WL 6027602, at *4 (S.D. Cal. Dec. 5, 2011) (distinguishing between a product's failure to

---

[19] In the FAC and SAC, Zhang alleged "hundreds of thousands" of sales. (FAC ¶ 48; SAC ¶ 63.) In the TAC, Zhang reduces the alleged sales to "thousands" without any explanation for the change. (TAC ¶ 71.)

perform versus a safety hazard). Nor does he allege facts showing *any* of the *Limandri* factors, as he fails to allege a fiduciary relationship, IKEA's exclusive knowledge, overt acts of concealment, or his reliance on any misleading partial representations. (*See* Order at 7; Sections IV.C.1 and IV.C.2.i, *supra*.)[20]

Despite a fourth pleading attempt, Zhang has not shown an unreasonable safety hazard beyond a "conjectural or hypothetical" level, as he still fails to (i) connect any purported slat testing to consumer usage or any product failure, much less (ii) provide a single example of *anyone* hurt by a HEMNES or BRIMNES daybed. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028-29 (9th Cir. 2017) ("[T]he SAC lacks any allegations indicating that any customer, much less any plaintiff, experienced such a fire—a notable omission if the alleged unreasonable safety hazard arises in *all* Yamaha outboard motors sooner or later.") (emphasis in original); *see also Klaehn v. Cali Bamboo, LLC*, 2021 WL 3044166, at *10 (S.D. Cal. June 14, 2021) ("These allegations of 'conjectural and hypothetical' injuries fail to establish 'an unreasonable safety risk.'"); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 568 (N.D. Cal. 2019) ("[T]he case law suggests that an event only rises to the level of an 'unreasonable safety hazard' in dangerous situations analogous to 'engine disintegration or failure or engine fire,'" or "'traveling at unsafe speeds[.]'"). Because Zhang fails to allege facts showing a duty to disclose, the omission-based claims fail for another reason.

**3. Zhang's UCL, FAL, and CLRA claims also fail because they are equitable, but he seeks damages and pleads an adequate legal remedy.**

Zhang's UCL and FAL claims are equitable, as is any request for restitution or injunctive relief. *See Madrigal v. Hint, Inc.*, 2017 WL 6940534, at *5 (C.D. Cal. Dec. 14, 2017). Thus, these claims cannot proceed unless Zhang alleges facts showing that his legal remedies are inadequate. *See Fonseca v. Goya Foods, Inc.*, 2016 WL 4698942, at *7-8 (N.D. Cal. Sep. 8, 2016).

As the Ninth Circuit held in *Sonner v. Premier Nutrition Corp.*, when a plaintiff does not allege facts showing that legal remedies are inadequate, equitable claims should be dismissed. 971 F.3d 834, 844 (9th Cir. 2020); *see also Guzman v. Polaris Indus., Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (rejecting attempts to distinguish *Sonner* on procedural grounds). The reasoning underlying *Sonner* applies here:

[20] Nor does Zhang even reach the *Limandri* factors, as he fails to show a central functionality defect unrelated to safety. He alleges no facts showing his daybed was "unusable as sold" or that he had any problem using his daybed because of comb joints. *See Oddo v. United Techs. Corp.*, 2022 WL 577663, at *29 (C.D. Cal. Jan. 3, 2022) ("A central function defect renders the product unusable as sold.").

because Zhang seeks money damages, an adequate legal remedy exists on the face of the TAC. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908 (N.D. Cal. 2021) ("Post-*Sonner* courts have indicated" that an alleged loss of money or product value from "reliance on" "representations and/or omissions by [d]efendants" is "*exactly the type of injury* for which legal remedies are appropriate.").

Zhang again fails to allege that legal remedies are inadequate. Instead, the TAC seeks money damages based on the same purported conduct underlying Zhang's equitable claims, showing that adequate legal remedies *are* available. (TAC ¶¶ 91, 132-133, 142, Prayer at ¶ B.) For this independent reason, his equitable UCL and FAL claims, as well as any request for restitution or injunctive relief, should be dismissed. *See, e.g.*, *Grundstrom v. Wilco Life Ins.*, 2022 WL 2390992, at *2-3 (N.D. Cal. July 1, 2022) (Chesney, J.) (dismissing UCL claim for failure to show inadequate legal remedies).

**4. Zhang's group pleading also does not satisfy Rule 9(b).**

Rule 9(b) applies to claims "grounded" or "sound[ing] in fraud[.]" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Zhang alleges IKEA intentionally misled consumers by misstating the qualities of its daybeds and selling daybeds with a known, concealed "defect." (*See* TAC ¶¶ 42-48, 99, 103, 119, 130.) These claims sound in fraud and must satisfy Rule 9(b). *See In re Arris Cable Modem Consumer Litig.*, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018) (applying Rule 9(b) to UCL, CLRA, and FAL claims based on alleged concealment of product defect). Thus, Zhang must allege each of his claims against each named defendant with particularity. Lumping both "defendants" together for every allegation violates Rule 9(b). *See Corson v. Toyota Motor Sales, U.S.A., Inc.*, 2013 WL 1802709, at *4 (C.D. Cal. Apr. 24, 2013) ("Plaintiffs' decision to lump both Defendants as 'Toyota' creates vague and conflicting allegations in the FAC."); *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (similar).

The TAC again names two IKEA entities—IKEA US RETAIL LLC and IKEA North America Services, LLC—but it still makes no attempt to differentiate their conduct. (TAC ¶¶ 12-13.) Zhang alleges in conclusory fashion that all the purported misconduct was committed by IKEA US RETAIL LLC, *or* that IKEA North America Services, LLC is responsible for all the same conduct "in conjunction with" IKEA US RETAIL LLC. (*See id.* ¶ 13 n.2.) The rest of the TAC lumps both "Defendants" together for every allegation. (*See id.* ¶¶ 14-150.) Lumping multiple defendants together like this fails to satisfy Rule 9(b). *See Sugarman v. Muddy Waters Cap. LLC*, 2020 WL 633596, at *4-5 (N.D. Cal. Feb. 3, 2020) (Chesney,

J.) (agreeing "Rule 9(b) does not allow a complaint to merely lump multiple defendants together"); *Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2023 WL 2191214, at *4 (N.D. Cal. Feb. 22, 2023) (Chesney, J.) (similar). Thus, Zhang's UCL, FAL, and CLRA claims fail for this additional reason.

**D. Zhang Still Fails to State Any Express or Implied Warranty Claim.**

Beyond failing to allege any defect or injury (Section IV.B), Zhang has not stated a warranty claim for <u>three</u> more reasons. *First*, the express warranty claim fails because Zhang does not allege the existence or breach of an express warranty.[21] *Second*, the express warranty claim also fails because Zhang never presented his daybed to IKEA for service. *Third*, Zhang does not allege facts showing that his daybed is unmerchantable, which defeats both implied warranty claims.

**1. Zhang fails to show that IKEA created or breached any express warranty.**

Zhang continues to rely on marketing statements to try to create an express warranty. (TAC ¶ 139.) But "[t]o constitute an actionable express warranty," a marketing "statement 'must be ***specific*** and ***unequivocal***[,]'" and "it must be ***written***." *T&M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015). Thus, Zhang must point to a "specific" and "unequivocal" written statement to which *he* was exposed. *Maneely v. Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997).

Further, when a consumer product is covered by written terms (like the Refund Policy covering Zhang's daybed), and a plaintiff alleges that product descriptions outside of those written terms (like marketing) constitute an express warranty, courts must apply a "reasonably consistent reading" of the two. *See Barrera v. Samsung Elecs. Am., Inc.*, 2018 WL 10759180, at *9 (C.D. Cal. Dec. 7, 2018). In other words, the written terms apply even when a plaintiff tries to base his or her warranty claim on marketing statements. *See, e.g.*, *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1019 (N.D. Cal. 2014) ("The only reasonable and consistent reading of the alleged express warranty statements and the limited warranty is to read the limited warranty—including its one-year warranty period and restriction on remedies—as applying to the statements."). Zhang ignores these principles, and his claim fails on several levels.

*First*, Zhang fails to allege *which* IKEA entity purportedly published any marketing. (*See* Section IV.C.4.) Thus, he fails to allege *who* provided any supposed warranty. *See, e.g.*, *Luppino v. Mercedes-Benz*

[21] Zhang has repeatedly withdrawn his express warranty claims in response to IKEA's motions to dismiss (ECF No. 37 at 5 n.1; ECF No. 55 at 5 n.3), yet the TAC reasserts an express warranty claim.

*USA, LLC*, 2013 WL 6047556, at *6 (D.N.J. Nov. 12, 2013) (dismissing warranty claims against parent company Daimler because subsidiary Mercedes-Benz USA issued the warranty, not Daimler).

*Second*, the TAC identifies no written (or oral) statements saying slats would not use comb joints. Thus, Zhang identifies no "specific and unequivocal written statement" in any IKEA marketing constituting an "explicit guarantee" that the pine wood bed slats would never incorporate comb joints. *See Yastrab v. Apple Inc.*, 2015 WL 1307163, at *7 (N.D. Cal. Mar. 23, 2015); *Maneely*, 108 F.3d at 1181.

*Third*, under IKEA's Refund Policy, Zhang could have returned his daybed for a full refund within six months. (McCarthy Decl., Ex. A.) Zhang alleges he went back to the IKEA store just two days after his purchase (TAC ¶ 22), but he never alleges he attempted a return or refund.[22] Thus, he has no support for any claim that he was "deprived of the benefit of the bargain" or that IKEA "failed or refused" to remedy a problem. (*Id.* ¶¶ 40, 139-140.) *See Barrera*, 2018 WL 10759180, at *9-10 (dismissing warranty claim because "[t]here are no allegations that [plaintiffs] ever contacted Samsung or were denied warranty service."). For each of these separate reasons, Zhang's express warranty claim (Count V) fails again.

**2. Zhang does not allege multiple service attempts, as required for a Song-Beverly claim.**

Zhang asserts his express warranty claim (Count V) under the SBA. But under the SBA, a manufacturer must be "afforded 'a reasonable number of attempts' to service or repair the nonconforming item. Cal. Civ. Code § 1793.2(d). . . . [A]s a matter of law, one opportunity to repair is never enough." *Arakelian v. Mercedes-Benz USA, LLC*, 2018 WL 6422649, at *3 (C.D. Cal. June 4, 2018); *see also Kearney v. Hyundai Motor Co.*, 2010 WL 9093204, at *6 (C.D. Cal. June 4, 2010) (finding one service opportunity insufficient). Zhang does not allege he ever gave IKEA an opportunity to fix or exchange his daybed. (TAC ¶¶ 16-31.) Thus, his express warranty claim fails for another reason.

**3. Zhang alleges no facts establishing that his (or any other) daybed is unmerchantable.**

In Counts I and VI, Zhang claims that IKEA breached the implied warranty of merchantability because HEMNES and BRIMNES daybeds supposedly are "not fit for their ordinary purpose." (TAC ¶¶ 84, 146.) But as in the FAC and SAC, the TAC alleges no facts to support this generic conclusion. *See*

---

[22] A warrantor is not liable just because a product fails to perform as warranted. *See Crown Cell Inc. v. Ecovacs Robotics Inc.*, 2022 WL 4087512, at *5 (N.D. Cal. Sep. 6, 2022). Rather, "'the question is whether [plaintiff] sought repairs, refunds, or replacements and, if so, whether [the company] responded appropriately[.]'" *Id.*

*Campos v. Polaris, Inc.*, 2024 WL 1816945, at *3-4 (C.D. Cal. Mar. 5, 2024) (dismissing claims "under the Commercial Code and the Song-Beverly Act" because plaintiffs failed to show unmerchantability).

The implied warranty of merchantability requires "only that a [product] be reasonably suited for ordinary use. It need not be perfect in every detail so long as it 'provides for a minimum level of quality.'" *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 980 (C.D. Cal. 2014). To allege unmerchantability, plaintiffs must allege facts showing "the product 'contains an inherent defect which is *substantially certain to result in malfunction* during the useful life of the product.'" *See Sims v. Kia Motors Am., Inc.*, 2014 WL 12558249, at *7 (C.D. Cal. Mar. 31, 2014); *Ocampo v. Apple Inc.*, 2022 WL 767614, at *5 (N.D. Cal. Mar. 14, 2022) (explaining the same pleading requirement for implied warranty claims).

Even when a complaint alleges a purported "safety" defect generally, there still must be allegations showing how the defect impaired *plaintiff's* product usage. *See Acedo v. DMAX, Ltd.*, 2015 WL 12696176, at *26 (C.D. Cal. Nov. 13, 2015) ("[R]isks alone are not sufficient to state a plausible claim[.]"); *Kahn*, 2019 WL 3955386, at *7 (dismissing claim because plaintiff did not allege experiencing defect). For example, in *Acedo*, plaintiffs alleged that certain GM trucks had a defective diesel particulate filter. 2015 WL 12696176, at *2-4. Plaintiffs alleged the filter created safety risks, including fire risk, emission of toxic gases into the passenger compartment, and increased risk of traffic accidents. *Id.* at *4-5. Despite the severity of these alleged risks, the court dismissed the implied warranty claim. *Id.* at *24-25. Canvassing decisions in this Circuit, the court explained that safety risks alone are not enough to state an unmerchantability claim absent allegations that plaintiffs "actually experienced the risks[.]" *Id.* at *25-26.

The Court rejected Zhang's implied warranty claims twice because he failed to allege plausible facts showing that IKEA daybed slats are defective or that comb joints pose a non-speculative risk of failure. (Order at 6; Second Order 4-5.) *See Fitzpatrick v. Ford Motor Co.*, 2022 WL 17037498, at *4 (C.D. Cal. Nov. 15, 2022) (dismissing implied warranty claims for failure to adequately allege defect); *Mathison v. Bumbo*, 2008 WL 8797937, at *10 (C.D. Cal. Aug. 18, 2008) (dismissing implied warranty claim because plaintiffs "failed to allege, except in the most conclusory manner, that the Bumbo seats are likely to malfunction"). The TAC includes no new facts about any HEMNES or BRIMNES daybed failures, from comb joints in the slats or otherwise. (*See* TAC ¶ 48.) The TAC also does not explain how any purported testing shows or even suggests a substantial certainty of malfunction based on ordinary consumer usage,

as underscored by the paucity of complaints and the overwhelmingly favorable reviews in the sources Zhang himself cites. (McCarthy Decl., Exs. B-C; TAC ¶ 16 n.4.) Zhang has again failed to show an inherent defect that is substantially certain to result in malfunction. (Order at 6; Second Order at 5-11.)

Likewise, Zhang still alleges nothing showing that *his* daybed failed to perform its ordinary purpose *because of* comb joints. He does not allege any slats ever failed, or that the supposed "defect" in his daybed harmed anyone. (TAC ¶¶ 16-31.) Instead, he alleges that, after he assembled his daybed, it did not feel as sturdy to him as the "floor model" and seemed "perceivably weaker." (*Id.* ¶¶ 22-23.) But these vague allegations do not show that the daybed lacked even the most basic degree of fitness for ordinary use. Nor do they show how *comb joints* caused any perceived issue, or what environmental "fluctuations" could have affected the comb joints in such a short period. (*Id.* ¶¶ 2, 30-31.) Once more, Zhang alleges nothing showing that comb joints prevented use of his daybed or a substantial certainty of failure from ordinary use, and his implied warranty claims fail again. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (unmerchantability means the "product lacks even the most basic degree of fitness for ordinary use").

**E. Zhang Lacks Standing to Pursue Injunctive Relief.**

Zhang also seeks injunctive relief (TAC ¶ 110, Prayer at ¶ C), but he lacks standing to do so. To seek prospective injunctive relief, "the threat of injury must be actual and imminent, not conjectural or hypothetical." *Hanna v. Walmart Inc.*, 2020 WL 7345680, at *7 (C.D. Cal. Nov. 4, 2020). The "threatened injury must be *certainly impending*" and "allegations of *possible* future injury are not sufficient." *Id.* (emphasis in original). Zhang also must show that *he* is at risk of future injury personally. *See Hoffman v. Ford Motor Co.*, 2021 WL 3265010, at *10 (C.D. Cal. Mar. 31, 2021). He has not done so.

Zhang claims past economic injury based on his alleged daybed purchase. (TAC ¶¶ 5, 41.) He claims he "would not have bought" the daybed or "would have paid substantially less" had he known of the comb joints. (*Id.*) But he does not allege any intent to buy another daybed, or facts supporting a concrete, imminent threat of being purportedly harmed again. (*Id.* ¶¶ 16-44.) Thus, he lacks standing, and his requests for injunctive relief should be dismissed. *See, e.g.*, *Hudson v. Lyft, Inc.*, 2024 WL 3585596, at *4 (N.D. Cal. July 30, 2024) (Chesney, J.) ("Hudson has not alleged her intention or desire to use Lyft's services at any point in the future."); *Bryan v. Del Monte Foods, Inc.*, 2023 WL 4758452, at *3 (N.D. Cal. July 25, 2023) (Chesney, J.) (dismissing injunctive relief claims for similar reasons).

**F. The Nationwide Class Allegations Should Be Stricken.**

Rule 23(d) provides that the Court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly[.]" Fed. R. Civ. P. 23(d)(1)(D). "[C]ourts in this Circuit have struck class allegations where it is clear from the pleadings that a class could not be certified." *Ruegsegger v. Caliber Home Loans*, 2019 WL 8163640, at *6 (C.D. Cal. Jan. 8, 2019). Zhang is the only plaintiff, alleging citizenship, purchase, and injury in California. (TAC ¶¶ 11, 16-23.) Yet he seeks to represent a putative nationwide class on his implied warranty claim under the Commercial Code, and on his UCL, FAL, and CLRA claims. (*See id.* ¶¶ 78-133.) He cannot do so.

**1. The Court should strike the nationwide class allegations for lack of standing.**

"Courts routinely dismiss claims for lack of subject-matter jurisdiction where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce because the named plaintiff lacks standing to invoke the foreign [law]." *Carpenter v. Petsmart, Inc.*, 441 F. Supp. 3d 1028, 1038 (S.D. Cal. 2020) (quotations omitted); *see also Broomfield v. Craft Brew All., Inc.*, 2017 WL 3838453, at *14 (N.D. Cal. Sep. 1, 2017) (courts "should address standing prior to class certification").

Zhang tries to assert four of his six claims on behalf of a putative nationwide class. (TAC ¶¶ 84, 103, 113, 122.) Yet he alleges that he is a citizen of and suffered injury in California only (*id.* ¶¶ 11, 16-23), and he lacks standing to assert any claim based on the laws of any other state. *See Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 908-911 (N.D. Cal. 2019) (agreeing plaintiffs lack "standing to bring claims under the laws of states where they have alleged no . . . pertinent connection"); *Przybylak v. Bissell Better Life, LLC*, 2019 WL 8060076, at *3-4 (C.D. Cal. July 19, 2019) (similar).

Zhang cannot evade the standing requirement by pointing to his class allegations. "That a suit may be a class action . . . adds nothing to the question of standing." *Lewis v. Casey*, 518 U.S. 343, 357 (1996). Thus, it is irrelevant that "the [TAC] frames the putative classes as a nationwide class and a [state] subclass," because "there is no claim that governs a nationwide class." *Carpenter*, 441 F. Supp. 3d at 1039; *accord Vitiosus v. Alani Nutrition, LLC*, 2022 WL 2441303, at *10 (S.D. Cal. July 5, 2022) ("There are no claims that would apply to a nationwide class.").

**2. Choice-of-law principles also preclude a nationwide action.**

Zhang also cannot assert California law claims on behalf of a putative nationwide class, because

choice-of-law principles preclude a nationwide class in this circumstance. There are material differences in state laws, states have a compelling interest in applying their own laws, and those interests are impaired by applying a foreign state's laws. The Ninth Circuit has held that variations in state law pose insurmountable problems for proposed "nationwide" claims asserted under a single state's law, like Zhang's California claims here. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-94 (9th Cir. 2012) (holding district court erred by erroneously concluding that California law could apply to nationwide class), *overruled in part on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n.32 (9th Cir. 2022). Courts also have held that this determination can and should be made on the pleadings. *See Cover v. Windsor Surry Co.*, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016) ("*Mazza* is 'not only relevant but controlling,' even at the pleading phase."); *Davison v. Kia Motors Am., Inc.*, 2015 WL 3970502, at *3 (C.D. Cal. June 29, 2015) (dismissing "nationwide" claims at pleading stage); *Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, at *7-10 (C.D. Cal. Apr. 10, 2018) (same).

In Counts I through IV of the TAC, Zhang alleges California law claims on behalf of a putative nationwide class. (*See* TAC ¶¶ 84, 103, 113, 122.) Under *Mazza*, *Davison*, *Vinci*, and similar authorities, these nationwide claims should be dismissed or stricken. "Over the past several decades, California courts have resolved choice of law questions using the 'governmental interest' analysis." *Vinci*, 2018 WL 6136828, at *5. The analysis has <u>three</u> prongs, each of which supports dismissal.

*First*, there are material differences in the consumer protection and warranty laws of the fifty states. *See, e.g.*, *Vinci*, 2018 WL 6136828, at *7-8 (finding material differences between and among 50 states' consumer protection and breach of warranty laws); *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at *9-14 (N.D. Cal. Aug. 15, 2016) (similar); *Hamilton v. TBC Corp.*, 328 F.R.D. 359, 385 (C.D. Cal. 2018) (similar); *Davison*, 2015 WL 3970502, at *2 ("California's consumer protection statutes are materially different from those in other states."); *In re Hitachi Television Optical Block Cases*, 2011 WL 9403, at *6 (S.D. Cal. Jan. 3, 2011) (finding "material conflicts" among nationwide consumer protection laws).[23]

*Second*, "each of the other forty-nine states has an interest in applying its own laws to the [products]

---

[23] IKEA has also attached charts showing material differences and variation between and among the fifty states' breach of implied warranty and consumer protection laws. (*See* McCarthy Decl., Exs. D-E.) Courts rely on such charts for this analysis. *See, e.g.*, *McKinney v. Corsair Gaming, Inc.*, 646 F. Supp. 3d 1133, 1142 (N.D. Cal. 2022); *Vinci*, 2018 WL 6136828, at *7.

purchase[d] within their borders." *Vinci*, 2018 WL 6136828, at *9. As *Mazza* recognized, this interest is "predominant." 666 F.3d at 592. Indeed, foreign states "obviously have an interest in having their own laws applied" to the transactions "within their borders." *Vinci*, 2018 WL 6136828, at *9.

*Third*, the "state impairment" prong favors applying the laws of each state, rather than California (or another foreign state) law on a nationwide basis. "[S]ince Plaintiff[] ha[s] brought a nationwide class action, [his] claim encompasses class members who reside and have purchased their [products] outside of California, and therefore California's interest in applying its law with respect to those members is outweighed by the interests of the other forty-nine states' interest in applying their laws to protect consumers with[in] their borders." *Vinci*, 2018 WL 6136828, at *9 (citing *Mazza*, 666 F.3d at 594).

Because of the material differences in state laws, states' interests in applying their own laws, and states' impaired ability to protect consumers within their borders if a foreign state's law were to apply, Zhang's nationwide claims under California law are unauthorized and should be dismissed or stricken. *See Hageman v. Hyundai Motor Am.*, 2024 WL 694378, at *3 (C.D. Cal. Jan. 5, 2024) ("[I]t would 'make little sense' to 'wait until class certification proceedings to resolve it given the burdens class certification and other class-related discovery imposes on parties.'").

## V. CONCLUSION

Zhang still alleges no facts showing a safety defect or injury. He still fails to allege his consumer fraud claims with particularity, any misrepresentation or omission, or any basis to proceed with equitable relief. He still alleges no facts showing that IKEA breached any warranty. And he still cannot represent a nationwide class. After four attempts, Zhang fails to state any claim, and the case should be dismissed with prejudice. *See A. H. v. West Contra Unified Sch. District*, 2024 WL 1719484, at *2 (N.D. Cal. Apr. 22, 2024) (dismissal with prejudice is proper when plaintiff repeatedly fails to cure pleading deficiencies).

Dated: October 31, 2025

GREENBERG TRAURIG, LLP

By: */s/ Robert J. Herrington*
Robert J. Herrington
Michael E. McCarthy
Attorneys for Defendants IKEA US RETAIL LLC and IKEA NORTH AMERICA SERVICES, LLC